## Wickersham's Appeal.

A will created a trust fund, directing that on the death of the beneficiary the fund should become part of the residuum. The will also contained a residuary devise. *Held*, that a contingent interest in the trust fund vested at once in the residuary devisees, which would pass by their assignment and release. purporting to transfer all property and all right, title, and interest under such will.

(Decided October 5, 1885.)

Appeal from a decree of the Orphans' Court of Philadelphia County, dismissing exceptions to an adjudication of distribution. Affirmed.

By the third clause of his will, Samuel M. Wickersham gave $20,000 in trust for his daughter, then unmarried, for life, with remainder to her children, etc., as she should appoint by will, or, in the absence of appointment, to her children, etc., equally; directing that, in default of children, etc., the sum so given should fall into and become part of his residuary estate. By the fourth clause of the will, the residuary estate, real and personal, was given to his sons, Samuel, Morris, and Cadwalader, in equal shares, less advancements made to them, respectively, as shown by his ledger. Cadwalader and Morris were appointed executors.

The $20,000 was paid to the trustee in 1859, and subsequently the executors filed their account, which was referred to an auditor for settlement and distribution. The auditor having reported that the advancements to Samuel exceeded his share of the fund to be distributed, by $18,312.34, exceptions were filed

NOTE.—A deed must be taken most strongly against him who executes it. Beeson v. Patterson, 36 Pa. 24; Algonquin Coal Co. v. Northern Coal & I. Co. 162 Pa. 114, 29 Atl. 402.

by the latter to this finding. Afterwards, on April 13, 1861, Samuel, in consideration of the sum of $15,500 paid to him by Cadwalader and Morris, executed to them a deed for his interest in the residuary realty, and an assignment of all his interest in the personal estate of the testator, executing, at the same time, a release, to the estate and the executors, of all accounts, claims, demands, etc., and a few days afterwards his exceptions were withdrawn, and a decree entered confirming the report of the auditor. The daughter died without leaving children or issue, in July, 1884, after which an account was filed by the substituted trustee, of the $20,000 held in trust during her lifetime, and which at her death fell, under the terms of the will, into the residuary estate.

It was claimed on behalf of Samuel that his interest in this fund was only a contingent one, and that it remained in him notwithstanding the assignment and release; that the parties only intended to embrace in their settlement his interest in the fund then in the hands of the executors for distribution, and that the general words of the assignment should be restrained accordingly. The auditor, however, held that the assignment and release passed the fund; and he awarded it accordingly. Exceptions to his report were dismissed by a majority of the court, and Samuel M. Wickersham appealed.

*J. Cooke Longstreth,* for appellant.—The interest of testator's sons in the trust fund was contingent on the death of their sister without leaving a child or children, or the issue thereof surviving her. Dunwoodie v. Reed, 3 Serg. & R. 451; Stump v. Findlay, 2 Rawle, 168, 19 Am. Dec. 632; Waddell v. Rattew, 5 Rawle, 234; Buzby's Appeal, 61 Pa. 111; Mergenthaler's Appeal, 15 W. N. C. 441.

Whether a vested or contingent remainder, Samuel's share did not pass by his deed of April 13, 1861. Pennock v. Eagles, 102 Pa. 290.

The proper application of the maxim, *Nam ex antecedentibus et consequentibus fit optima interpretatio,* makes the recital control the subsequent generalty of the grant. 2 Bl. Com. *357; 2 Parsons, Contr. 7th ed. **380, 381, see *notes, t* and *u.*

"The court will give to the contract the construction which will bring it as near to the actual meaning of the parties as the words they saw fit to employ, when properly construed, and the rules of law, will permit." 2 Parsons, Contr. 7th ed. *494.

"The subject-matter of the contract is to be fully considered. . . . .So, too, the situation of the parties at the time, and of the property which is the subject-matter of the contract, and the intention and purpose of the parties in making the contract will often be of great service in guiding the construction." Id. *499.

Every part of the deed, if possible, is to be made to take effect, and no word but what may operate in some shape or other. 2 Bl. Com. **379, 380. *Nam ex antecedentibus et consequentibus fit optima interpretatio.* Id.

A deed is to be taken most strongly against him who executes it; yet, in general, this rule from its "strictness and rigor is the last to be resorted to, and is never to be relied upon but where all other rules of exposition fail." Id. 380.

"The best construction is that which is made by viewing the subject of the contract as the mass of mankind would view it, for it may be safely assumed that such was the aspect in which the parties themselves viewed it. A result thus obtained is exactly what is obtained from the cardinal rule of intention." Gibson, Ch. J., in Schuylkill Nav. Co. v. Moore, 2 Whart. 491.

"Another rule of construction, equally well known, is that the words of an agreement are to be applied to the subject-matter about which the parties are contracting at the time." Teutonia F. Ins. Co. v. Mund, 102 Pa. 94.

"The matter in hand is always presumed to be in the mind and thoughts of the speaker, although his words seem to admit of a larger sense, and therefore the generality of words used shall be restrained by the particular occasion. Words should not be taken in their broadest import, when they are equally appropriate in the sense limited to the object the parties had in view. Hoffman v. Ætna F. Ins. Co. 32 N. Y. 405, 88 Am. Dec. 337."

Lord Bacon, in his Law Maxims, Reg., 10, says: "All words, whether they be in deeds or in statutes, or otherwise, if they be general, and not express and precise, shall be restrained unto the fitness of the matter and the person."

*William P. Gest, John Marshall Gest,* and *Robert H. Mc-Grath,* for appellees.—It is of little moment whether the interest of Samuel M. Wickersham in the fund for distribution was vested or contingent, as in either case it passed under the

broad terms of the assignment. It is quite clear, however, that it belonged to that well-known class of remainders which are styled vested, subject to a devesting contingency. It was vested so long as the life tenant remained childless, and only subject to the contingency of her having issue before her death. Passmore's Appeal, 23 Pa. 381; Buzby's Appeal, 61 Pa. 111; Pennock v. Eagles, 102 Pa. 290; Booth v. Booth, 4 Ves. Jr. 399; Doe *ex dem.* Willis v. Martin, 4 T. R. 39.

"If the intention of the parties is not clear and plain, but *in equilibrio,* the words shall receive their more natural and proper construction." Hannum v. West Chester, 70 Pa. 372.

In accordance with this principle were decided: Alden's Appeal, and the Cornwall Ore Bank Cases, 93 Pa. 182, in which a grant made in 1786 contained a reservation of "a sufficient quantity of iron ore for the supply of any one furnace." The court held that as there was no ambiguity in the words used, extrinsic evidence was inadmissible to show that the reservation was to be construed with reference to the character of the furnaces used in 1786, and the amount of ore sufficient for their supply.

*Verba charatarum fortius accipiuntur contra proferentem.* A deed shall be construed most strongly against the grantor. THOMPSON, J., in Beeson v. Patterson, 36 Pa. 24.

*Generalia verba sunt generaliter intelligenda.* "That which is generally spoken shall be generally understood."

The best construction is that which is made by viewing the subject of a contract as the mass of mankind would view it, for it may safely be assumed that such was the aspect in which the parties themselves viewed it. GIBSON, Ch. J., in Schuylkill Nav. Co. v. Moore, 2 Whart. 491. This was cited with approbation by the present Chief Justice in Pittsburg & B. Pass. R. Co. v. Pittsburg, 80 Pa. 75.

If the actual grant is doubtful, you may have recourse to the recitals for aid; and if the language of the statute is doubtful, you may look to the preamble to ascertain the intention, but not otherwise. Walsh v. Trevanion, 15 Q. B. 734; Young v. Smith, 35 Beav. 87; Bailey v. Lloyd, 5 Russ. Ch. 330.

OPINION BY MR. JUSTICE GORDON:

When we consider the will of Thomas Wickersham, deceased, we find that the entire devise to his three sons, Morris, Samuel, and Cadwalader, is contained in the fourth item thereof, and

that the gift is of his residuary estate. We also find from the preceding item, that it is expressly declared that the sum of $20,000, which was bequeathed to Doctor Morris C. Shallcross in trust for the use of the testator's daughter, Anna B. Wickersham, for and during her natural life, was, in the event of her death without child or children, or the issue of any child or children, her surviving, or in case any such child or children, or issue should die before attaining the age of twenty-one, to become part of the residuary estate, and, as the will reads, "be disposed of as I shall herein and hereby direct." Then occurs the residuary devise as follows: "I give, bequeath, and devise to my sons, Morris S. Wickersham, Samuel M. Wickersham, and Cadwalader Wickersham, and their respective heirs, executors, administrators, and assigns, as tenants in common, in equal shares, all the rest and residue of my estate, both real and personal, less the amounts charged against them respectively upon my ledger." It will thus be seen that this clause, when taken in connection with the preceding, leaves nothing undisposed of, present or prospective. The contingent interest in the trust fund was as fully embraced in this residuary clause as any other part of the testator's estate. How, then, can the conclusion be avoided that Samuel's deed of the 13th of April, 1861, which recites the above stated fourth item of the will, conveyed, *inter alia*, this contingent interest?

The language of the conveyance is the broadest possible; it conveys "all the personal estate of every kind, quality, and description, whatsoever and wheresoever situate, to and in which the said Samuel M. Wickersham is entitled or in anywise interested by virtue of the said recited last will and testament, or as one of the heirs of his father, the said Thomas Wickersham, deceased, together with all the rights, incidents, and appurtenances thereunto belonging or in any wise appertaining, and all the right, title, and interest of every nature whatsoever, of him, the said Samuel M. Wickersham, therein, to have and to hold, receive and take, all and singular the hereditaments hereby granted, with the rights, incidents, and appurtenances, unto the said Morris S. Wickersham and Cadwalader Wickersham, their heirs, executors, administrators, and assigns." Moreover, in it the grantor executes to Morris and Cadwalader an irrevocable power of attorney. "For him, and in his name, to ask, demand, sue for, recover, and receive all such sum or sums of money,

debts, dues, accounts, and other demands whatsoever which are now due and hereafter may become due and payable to him, as devisee, legatee, and heir aforesaid." And, as if this were not enough for the purpose of settling every possible subject of dispute, and putting the intention of the parties beyond all doubt, we have, of the same date as that of the deed above recited, a release, or quitclaim, to Morris and Cadwalader, as executors of their father's estate, in which we find the following language: "I, the said Samuel Wickersham, . . . have remised, released, quitclaimed, and forever discharged, the said Morris S. Wickersham and Cadwalader Wickersham, as well as executors aforesaid, as in their individual capacity, and all and singular the estate of the said Thomas Wickersham, deceased, real and personal, of and from all manner of action, cause or causes of action and actions, suits and debts, dues and duties, sum and sums of money, accounts, reckoning, bonds, bills, specialties, covenants, contracts, agreements, promises, variances, damages, judgments, extents, executions, claims, and demands whatsoever, which, as devisee as aforesaid, or as one of the heirs of my father, Thomas Wickersham, deceased, I ever had, now have, or which I, my heirs, executors, or administrators hereafter can, shall, or may have, for, upon, or by reason of, said devise or by reason of any matter, cause, or thing whatsoever, from the beginning of the world to the date of these presents."

Now, considering these papers alone, can there be any doubt but that every possible interest which Samuel had in his father's estate was thereby conveyed and released to his brothers? We cannot think that anyone will undertake to say that his contingent interest in the trust fund was of such a nature that it could not be conveyed, but if conveyance thereof was possible, then, doubtless, the language used was sufficient to pass it. But what have we, *dehors* the will and these conveyances, for consideration? Certainly nothing. It is true, the trust fund did not fall into the residuum until some twenty-three years after the execution of the assignment and release, but it does not hence follow that the parties did not intend to embrace in their settlement what was so clearly set forth in and disposed of by the will. It may have been regarded as of little value, or as a remote contingency; but there it was, as plainly provided for as anything else mentioned in the testament, and to say that, because of its contingent character, it was not conveyed by the deeds, is to

ignore the obvious and positive language of these instruments. As we cannot agree to a construction so foreign to the expressed intent of the parties, we must the rather adopt the conclusion of the court below.

The decree of the Orphans' Court is now affirmed, the appeal dismissed, and it is ordered that the appellant pay the costs.